IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
KNOXVILLE DIVISION

| | |
|---|---|
| MALIBU BOATS, LLC,<br><br>     Plaintiff<br><br>v.<br><br>SKIER'S CHOICE, INC.,<br><br>     Defendant. | Civil Action No.<br><br>**Jury Trial Demanded** |

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Malibu Boats, LLC ("Malibu" or "Plaintiff") hereby alleges as its Complaint against Defendant Skier's Choice, Inc. ("Skier's Choice" or "Defendant") as follows:

### INTRODUCTION

1. Malibu is the market share leader in the inboard sport boat industry. In recent years, Malibu has defended its position from direct competitors, like Skier's Choice, through the development and application of Malibu's award-winning innovations, some of which are embodied in Malibu's commercially available wake modification systems marketed under the trade name "Surf Gate". The U.S. Patent Office has awarded Malibu many patents on its wake-surf technologies, including U.S. Patent No. 9,260,161 ("the '161 Patent"), U.S. Patent No. 8,578,873 ("the '873 Patent"), and U.S. Patent No. 9,199,695 ("the '695 Patent"). In response to the success of Malibu's wake surf technology, Skier's Choice introduced surf systems on both its Moomba and Supra lines of boats that copied Malibu's innovative and entirely revolutionary redirection of at least water on one side to modify and improve the wake on the opposite side. Skier's Choice introduced surf systems on both its Moomba and Supra lines of boats, including the Moomba Flow and Supra Swell systems, both of which infringe Malibu's intellectual property.

These infringing systems have been and continue to be installed by Skier's Choice on boats that Skier's Choice has sold and continues to sell to consumers in the inboard sport boat industry. Malibu is entitled to compensation for Skier's Choice's infringement and to an injunction precluding Skier's Choice from selling boats or features that infringe Malibu's valuable intellectual property.

2.      Among Malibu's many innovations in the design, manufacture, and marketing of high performance inboard water boats is its revolutionary wake surf technology, for which it has been awarded several patents including the '161 Patent, the '873 Patent, and the '695 Patent. This technology modifies the wake formed by a boat travelling through water, which, in part, creates a better-quality surf wake and, in the case of the '161 and '873 Patents, enables users to surf on either side of the boat's wake at the push of a button. Further, Malibu's SURF GATE® technology has revolutionized the manner in which users who engage in wake surfing are able to utilize their boats. Before the development of Malibu's wake surf technology, some boaters who sought to engage in wake surfing had to first cumbersomely configure their boats. For example, if a boater wanted to surf on a port side wake, he or she had to fill ballast tanks or bags on one the port side with hundreds of pounds of water, and often shift additional non-water ballast, like passengers, to the port side of the boat. All this ballast on the port side caused the boat to lean or list significantly, which created a larger, more pronounced, surf-quality wake on the weighted (in this example, the port) side of the boat only. A similar configuration was needed if a boater wanted to surf on a starboard side, but instead of the port side, all the ballast was directed to the starboard side. Either way, the configuration was cumbersome, time-consuming, and potentially annoying for passengers. Worse still, if a boater wanted to switch the surf wave from one side to the other, he

or she would have to transfer substantially all ballast and passengers to the other side of the boat – a process that takes a substantial amount of time as the boater didn't just have to fill ballast or move people on one side, her or she also had to empty, reduce or move ballast on the other. Malibu's patented SURF GATE® technology alleviates this time-consuming and cumbersome process. Boats manufactured by Malibu that utilize patented SURF GATE® technology allow boaters, at the touch of a button, to configure a boat create a better-quality surf wave on a desired side of the boat in a matter of seconds without having to shift passengers or weight. Moreover, at the touch of a button, boats manufactured by Malibu can change from a configuration that created a better-quality surf wave on a one side of the boat to the other in a matter of seconds, again, without having to shift passengers or weight. Accordingly, Malibu's SURF GATE® allows users to more easily configure a boat for surfing on a desired side and readily and straightforwardly switch to configuring the boat for surfing on the other side, even doing so without stopping. Such configurations vastly improve the usability of the boats for wake surfing and allow surfers to perform previously impossible moves.

3.     Malibu offers its proprietary wake surf technology under the name SURF GATE® as a feature on many of its boat models. Malibu's introduction of SURF GATE® garnered significant public attention, and SURF GATE® won the Watersports Industry Association's Innovation of the Year award in 2013.

4.     SURF GATE® has received widespread praise in the industry since its release.  For example, a May 2013 review of SURF GATE® in Wakeboarding Magazine noted that "the possibilities with Surf Gate are absolutely revolutionary.  You can instantly switch which side of

the boat you want your wave, so transfers from side to side are now a reality."[1] An October 2013 article in Wakeboarding Magazine discusses "new surf-specific boat technology" including SURF GATE® (and Nautique, which has licensed Malibu's patented technology), stating that the technology has brought wakesurfing "leaps and bounds in the direction of progression," and that certain moves were "previously near-impossible prior to the Malibu Surf Gate."[2] A September 2015 article in Boarders Magazine describes the different wakesurfing technologies offered performance sport boat manufacturers, including Malibu and licensees of its patented wakesurfing technology. The article comments that "Malibu's patented Surf Gate technology has helped shape a new concept for wake surf boat development by allowing a wakesurfer to transfer wake to wake, frontside to backside surfing, in a second. Since then every other boat company has created a similar sort of system that has been less focused on an individually weighted down starboard or port side, but rather an equal or at least mostly equal weighted boat that can change from side to side, regular to goofy, within seconds."[3]

5.     Malibu's SURF GATE® system has also enjoyed tremendous commercial success. Malibu currently sells thousands of boats equipped with SURF GATE® systems per year, and the take rate of Malibu's options SURF GATE® system is nearly 100% among Malibu buyers.

6.     In response to the success of Malibu's SURF GATE® system, Skier's Choice introduced surf systems on both its Moomba and Supra lines of boats, including the Moomba Flow and Supra Swell systems, that copied Malibu's innovative and entirely revolutionary redirection

---

1 http://www.wakeboardingmag.com/blog/wakeboarding-brand-channel/malibu-wakeboard-boats/2013/05/24/howit-works-surf-gate.
2 https://www.wakeboardingmag.com/blog/features/2013/10/17/how-to-wakesurf-transfer-on-the-fly.
3 http://boardersmag.com/articles/just-press-surf-a-new-era-in-wake-surf-towboat-technology.

of at least water on one side to modify and improve the wake on the opposite side.  Skier's Choice subsequently announced the Moomba Flow 2.0 and 3.0 surf systems, and the Supra Swell 2.0 and 3.0 surf systems.  Skier's Choice's surf systems infringe Malibu's intellectual property rights.

7.     The industry has recognized the pioneering invention of Malibu's wake surf technology and the patents that enable it.  Major industry players like Nautique/Correct Craft, Chaparral, Tigé, and Mastercraft have entered into license agreements with Malibu regarding certain of Malibu's wake surf technology patents that, among other things, permit those companies to make and use wake modification systems that redirect water on one side of the boat to improve the wake surfing on the other side.  Skier's Choice has refused to do so, opting to infringe Malibu's patents instead of paying for the right to use Malibu's inventions.  Malibu files this lawsuit to redress Skier's Choice's infringement.

## PARTIES

8.     Malibu is a Delaware corporation with its principal place of business at 5075 Kimberly Way, Loudon, Tennessee 37774-6469.

9.     Skier's Choice is an Oklahoma corporation with its principal place of business at 1717 Henry G Lane St., Maryville, Tennessee 37801-3701.

## JURISDICTION AND VENUE

10.     This action arises under the patent laws of the United States, Title 35 of the United States Code, including, but not limited to, 35 U.S.C. § 271.

11.     This court has original jurisdiction over patent infringement claims under 28 U.S.C. § 1331 and 1338(a).

12.     Personal jurisdiction over Skier's Choice is proper because Skier's Choice is domiciled, conducts business, and has committed acts of patent infringement in Tennessee.

13.     Venue is proper in this Court under 28 U.S.C. §§ 1391(b) – (c) and 1400(b) because Skier's Choice resides, has committed acts of infringement, and has a regular place of business in this judicial district.

## RELATED CASES

14.     In two earlier cases concluded in this District, Case No. 3:15-CV-00276-TAV-HBG ("the MasterCraft I case") and Case No. 3:16-cv-00082-TAV-HBG ("the MasterCraft II case"), Malibu asserted claims for infringement of the '161 Patent and the '873 Patent against MasterCraft Boat Company, LLC.  The Mastercraft I and Mastercraft II cases were both dismissed by stipulation of the parties on May 10, 2017, after Mastercraft entered into a royalty bearing license agreement with Malibu.

15.     In another earlier concluded case in this District, Case No. 3:13-CV-00656-TAV-HBG ("the Nautique case"), Malibu asserted a claim of infringement of the '873 Patent against a different defendant, Nautique Boat Company, Inc. The Nautique case was filed on October 31, 2013. Malibu amended its complaint to add a claim for infringement of the '873 Patent on December 13, 2013. The Nautique case was dismissed by stipulation of the parties on February 17, 2015, after Nautique entered into a royalty bearing license agreement with Malibu.

## GENERAL ALLEGATIONS

16.     Malibu designs, manufactures, and markets high performance inboard sport boats, and has had the leading market share position in the United States since 2010. Since the company was founded in 1982, Malibu has been a consistent innovator in the inboard sport boat industry,

designing products that appeal to an expanding range of recreational boaters and water sports enthusiasts whose passion for boating and water sports is a key aspect of their lifestyle. Malibu's innovations, such as its award-winning SURF GATE® technology, expand the market for its products by introducing consumers to new and exciting recreational activities and enhancing their experience of a day on the water with family and friends. Malibu has secured numerous patents that cover its innovations.

17. The '161 Patent, which issued on February 16, 2016, is titled "Surf Wake System for A Watercraft." A true and correct copy of the '161 Patent is attached as Exhibit A.

18. Malibu owns all rights, title, and interest in the '161 Patent.

19. The '161 Patent is valid and enforceable.

20. On August 11, 2017, the U.S. Patent and Trademark Office issued an Ex Parte Reexamination Certificate in Ex Parte Reexamination No. 90/013,819. The Ex Parte Reexamination Certificate confirmed the patentability of claims 1, 7, 10, 12, 13, 15, 19, and 29 of the '161 Patent.  Claims 2-6, 8, 9, 11, 14, 16-18, 20-28, 30, and 32-50 of the '161 Patent were not reexamined.

21. The '873 Patent is titled "Surf Wake System for A Watercraft" and issued on November 12, 2013. A true and correct copy of the '873 Patent is attached as Exhibit B.

22. Malibu owns all rights, title, and interest in the '873 Patent.

23. The '873 Patent is valid and enforceable.

24. On November 16, 2016, the Patent Trial and Appeal Board at the U.S. Patent and Trademark Office issued orders in response to two separate *inter partes* review petitions, IPR2016-01057 and IPR2016-01058, denying petitions for *inter partes* review of claims 1, 2, 6, 7, 17–20,

22, 23, and 27-29 of the '873 Patent, and concluding that the petitioner, MasterCraft Boat Company, LLC, had "not shown a reasonable likelihood of success in any of its challenges to" the claims of the '873 Patent.

25.     The '695 Patent, which issued on December 1, 2015, is titled "Surf Wake System for A Watercraft." A true and correct copy of the '695 Patent is attached as Exhibit C.

26.     Malibu owns all rights, title, and interest in the '695 Patent.

27.     The '695 Patent is valid and enforceable.

28.     Skier's choice manufactures, offers for sale, and sells within the United States inboard water-sport boats under the Supra and Moomba lines of boats. Skier's Choice has equipped and continues to equip its inboard water-sports boats with its own surf systems, including boats that include the Supra Swell, Swell 2.0, and Swell 3.0 surf systems, and boats that include the Moomba Flow, Flow 2.0, and Flow 3.0 surf systems. Skier's Choice offers the Supra Swell, Swell 2.0, and/or Swell 3.0 surf system on at least the following models of inboard water-sport boats: SR, SA, SL, and SE. Skier's Choice offers the Moomba Flow, Flow 2.0 and/or Flow 3.0 surf system on at least the following models of inboard water-sport boats: Helix, Max, Mondo, Craz, Mojo, and Mojo Pro.

29.     Skier's Choice is presently advertising and offering for sale in the United States inboard water-sports boats equipped with the Supra Swell and Moomba Flow surf systems.

30.     On information and belief, Skier's Choice learned of the '161, '873, and '695 Patents prior to the filing of the present complaint.  At least as early as July 15, 2017, individuals from Malibu contacted Brad Denning, CEO of Skier's Choice, regarding infringement of Malibu's patents, including the '161, '873, and '695 Patents. On July 28, 2017, Malibu contacted Brad

Denning of Skier's Choice by email, again providing notice of Malibu's surf system patents, including the '161, '873, and '695 Patents.

31.    Despite knowing of the '161, '873, and '695 Patents and that its surf systems infringe these patents, Skier's Choice has and continues to infringe the '161, '873, and '695 Patents through making, using, selling, and/or offering for sale within the United States the infringing products, through importing into the United States the infringing products, and/or through inducing or contributing to infringement by Skier's Choice's customers.

## CLAIMS FOR RELIEF

32.    The allegations in the following Count I, Count II, and Count III have evidentiary support or will likely have evidentiary support after a reasonable opportunity for further investigation or discovery.

33.    Malibu contends that boats that include the Supra Swell, Swell 2.0, and Swell 3.0 surf systems, and boats that include the Moomba Flow 2.0, and Flow 3.0 surf systems (collectively, the "Accused '161 Products") infringe at least one valid and enforceable claim of the '161 Patent, as discussed in Count I, and that each element of at least one claim of the '161 Patent is literally present in the Accused '161 Products or their use.  Malibu further contends that boats that include the Moomba Flow 3.0 surf system (the "Accused '873 Products") infringe at least one valid and enforceable claim of the '873 Patent, as discussed in Count II, and that each element of at least one claim of the '873 Patent is literally present in the Accused '873 Products or their use.  Malibu further contends that boats that include the Moomba Flow 1.0 surf system (the "Accused '695 Products") infringe at least one valid and enforceable claim of the '695 Patent, as discussed in Count III, and that each element of at least one claim of the '695 Patent is literally present in the

Accused '695 Products or their use. If the Court's constructions or other determinations indicate that an element of one of the claims discussed below is not literally present, Malibu contends that each such element is present under the doctrine of equivalents and reserves its right to provide more detailed doctrine of equivalents contentions after discovery and/or a claim construction order from the Court.

34.     The Accused '161 Products, the Accused '873 Products, and the Accused '695 Products identified herein are representative of Skier's Choice's infringing products, and are not intended to be exhaustive. Malibu expects that additional infringing products will be identified through discovery.  Furthermore, the claims of the '161, '873, and '695 Patents identified below are merely representative, and do not include an exhaustive list of claims infringed by the Accused '161 Products, the Accused '873 Products, and the Accused '695 Products.

### COUNT I: INFRINGEMENT OF U.S. PATENT NO. 9,260,161

35.     Malibu repeats and re-alleges each and every allegation contained in the preceding paragraphs with the same force and effect as if repeated in full here.

36.     Skier's Choice infringes the '161 Patent by, inter alia, making, using, selling, and/or offering for sale within the United States, and/or importing into the United States the Accused '161 Products and/or components covered by one or more claims of the '161 Patent. Skier's Choice has acted without authority or license from Malibu, in violation of 35 U.S.C. § 271(a).

37.     For example, and without limitation, Skier's Choice makes the Accused '161 Products in the United States. *See* https://www.skierschoice.com/careers/ ("The Skier's Choice manufacturing facility is located in Maryville, Tennessee…."). Upon information and belief, Skier's Choice uses the Accused '161 Products within the United States, for example, for

demonstration, testing, and development purposes.  Further, Skier's Choice sells and offers for sale the Accused '161 Products within the United States through a network of dealers. *See* https://www.moomba.com/dealerships.

38.     Skier's Choice induces others to infringe one or more claims of the '161 Patent in violation of 35 U.S.C. § 271(b). Skier's Choice has knowingly or with willful blindness induced its customers and potential customers to infringe the '161 Patent with the specific intent to induce such infringement by, among other things, encouraging infringing use of its above-described surf systems through advertisements and marketing material and by providing an owner's manual and other documentation that instructs dealers and customers in operating products and components provided by Skier's Choice in an infringing manner.  Skier's choice has continued these actions despite becoming aware of the '161 Patent and its infringement.

39.     Skier's Choice contributorily infringes one or more claims of the '161 Patent in violation of 35 U.S.C. § 271(c). Skier's Choice sells and offers to sell products or components knowing that they, alone or in combination with other components, infringe the '161 Patent and thereby contribute to others' infringement of the '161 Patent. Skier's Choice knows its products and components are especially made or especially adapted for use in creating a surf wake in a manner that infringes the '161 Patent and are not a staple item, article, or commodity of commerce suitable for substantial noninfringing use.

40.     On information and belief, Skier's Choice infringes the '161 Patent by supplying or causing to be supplied in and from the United States all or a substantial portion of the components of surf systems, where such components are uncombined in whole or in part, in such a manner as to actively induce the combination of such components outside of the United States

in a manner that would infringe the patent if such combination occurred inside the United States, and/or by supplying or causing to be supplied in and from the United States one or more components that are especially made or especially adapted for use in infringing surf systems and that are not staple articles of commodities of commerce suitable for substantial noninfringing use, where such components are uncombined in whole or in part, knowing that such components are so made or adapted and intending that such components will be combined outside of the United States in a manner that would infringe the patent if such combination occurred inside the United States. Skier's Choice has acted without authority or license from Malibu, in violation of 35 U.S.C. § 271(f). Skier's choice has continued these actions despite becoming aware of the '161 Patent and its infringement.

41.     For example, Skier's Choice manufactures, uses, sells, and offers for sale products, including the Accused '161 Products, that infringe Claim 1 of the '161 Patent.  **Claim 1** of the '161 Patent recites:

A water-sports boat having a surf wake system for modifying a wake having eventually diverging port and starboard waves formed by the water-sports boat travelling through water to enhance the starboard wave to have a face substantially smoother than a face of the port wave or to enhance the port wave to have a face substantially smoother than a face of the starboard wave, the water-sports boat comprising:

a hull having a transom;

a rudder for steering the water-sports boat as the hull moves through the water;

at least one of ballast tanks, bags, or bladders; and

a pair of flaps including a port flap and a starboard flap, each independently movable from

a retracted position wherein a respective flap is substantially entirely retracted behind

the transom such that no substantial portion of the respective flap extends past a port-

side edge, a starboard side edge, or a bottom edge of the transom to a deployed position

in which portions of a respective flap move past the transom to deflect water traveling

along the hull of the water-sports boat and past the transom;

wherein the port flap, wherein in the deployed position while the starboard flap is in the

retracted position, enhances the starboard wave by making the face of the starboard

wave substantially smoother than the face of the port wave;

wherein the starboard flap, wherein in the deployed position while the port flap is in the

retracted position, enhances the port wave by making the face of the port wave

substantially smoother than the face of the starboard wave;

wherein the water sports boat is configured to change from enhancing the starboard wave

to enhancing the port wave when a surfer desires to change from surfing an enhanced

starboard wave to surfing an enhanced port wave or to change from enhancing the port

wave to enhancing the starboard wave when the surfer desires to change from surfing

the enhance port wave to surfing the enhanced starboard wave, and wherein the water-

sports boat is configured to change from enhancing the port wave to enhancing the

starboard wave while moving through water at a speed suitable for surfing.

42.     The Accused '161 Products are water-sports boats each having a surf wake system

for modifying a wake having eventually diverging port and starboard waves formed by the water-

sports boat travelling through water to enhance the starboard wave to have a face substantially

smoother than a face of the port wave or to enhance the port wave to have a face substantially smoother than a face of the starboard wave. For example, as shown in Figure 1 below, the Accused '161 Products are water-sports boats with surf wake systems for modifying a wake having eventually diverging port and starboard waves formed by the water-sports boat travelling through water. *See, e.g.,* Figure 1; "2016 Moomba Boats" which is available on the Skier's Choice website at https://crm.skierschoice.com/files/documents/2016/10/26/2016_moomba_brochure_final_0.pdf ("the Moomba Product Brochure").



*Figure 1*

43.    The surf wake systems for the Accused '161 Products modify the wake to enhance the starboard wave to have a face substantially smoother than a face of the port wave and/or to enhance the port wave to have a face substantially smoother than a face of the starboard wave. For example, as described in Skier's Choice's 2016 Moomba Brochure, "Moomba's redesigned Auto Flow 2.0 Surf System delivers all-day waves with the flick of a switch. New contoured plates tame and control water flow coming off the surf-optimized hull. The result is massive surf waves, clean

14

lips and tons of push from the swim platform all the way back to the barrel. Plus, you can transfer side-to-side in a matter of seconds at the push of a button — no need to shift people around."

44. The Accused '161 Products include a hull having a transom and a rudder for steering the water-sports boat as the hull moves through the water. *See, e.g.,* Figure 2 retrieved from the Skier's Choice website at https://www.supraboats.com/models/supra-sa. The Accused '161 Products also include at least one of ballast tanks, bags, or bladders. For example, Figure 3 shows a ballast control screen of one of the Accused '161 Products for adjusting ballast in left, right, and center tanks of the Accused '161 Products. *See* Supra® Vision Touch™ 2018 Manual, https://crm.skierschoice.com/files/documents/2017/09/08/2018-Supra-Vision-Touch-Manual.pdf, at p. 26.



*Figure 2 (Annotated)*



*Figure 3*

15

45.     The Accused '161 Products include a pair of flaps including a port flap and a starboard flap. (*Figure 4* – retrieved from Skier's Choice's website at https://www.supraboats.com/technology/wake-surf-systems). For example, Skier's Choice makes available user manuals for its Supra line of boats that describe "[t]he Swell Surf System utilizes high-speed rams to adjust 5/16- inch stainless steel blades laser cut and bent to control water turbulence off the rear of the boat's running surface. The specially designed trailing edge of these blades, or flaps as these types of elements are referred to in a fluid dynamics, create a vortex-effect behind the boat resulting in specific wave shapes. Different angels of deployment of the blades create custom effects in the water turbulence to swell-up surf waves." *See, e.g.,* Supra 2017 Owner's Manual, https://crm.skierschoice.com/files/documents/2017/01/20/2017-Supra-Owners-Manual.pdf, at p. 70.



*Figure 4 (Annotated)*

46.     Each flap on the pair of flaps in the Accused '161 Products is independently movable from a position in which it is substantially entirely retracted behind the transom, such that

16

no substantial portion of the respective flap extends past a port-side edge, a starboard side edge, or a bottom edge of the transom, as shown in Figures 1 and 4. Each flap can be deployed to a position in which portions of the flap moves past the transom to deflect water traveling along the hull of the water-sports boat and past the transom. Figure 5, which is a still frame from a promotional video introducing the Supra Swell Surf System retrieved from https://www.youtube.com/watch?v=0QWyNThK8KQ, shows a port flap in the deployed position and moved past the transom to deflect water traveling along the hull.



*Figure 5*

47.     In the Accused '161 Products, the port flap, when in the deployed position while the starboard flap is in the retracted position, enhances the starboard wave by making the face of the starboard wave substantially smoother than the face of the port wave, and vice versa. The starboard flap is deployed for surfing a port side wake, and the port flap may be deployed for surfing a starboard side wake. *See* Figure 6, Supra Vision Touch™ 2018 Owner's Manual, https://crm.skierschoice.com/files/documents/2017/09/08/2018-Supra-Vision-Touch-Manual.pdf ("Supra Owner's Manual") at p. 23.



*Figure 6 (Annotated)*

48.     The Accused '161 Products are configured to change from enhancing the starboard wave to enhancing the port wave when a surfer desires to change from surfing an enhanced starboard wave to surfing an enhanced port wave, and vice versa, while moving through water at a speed suitable for surfing. Skier's Choice advertises and promotes that the Accused '161 Products are capable of transferring side-to-side with the operation of a single input. *See* Moomba Product Brochure at p. 5 ("Plus, you can transfer side-to-side in a matter of seconds at the push of a button….").

49.     As yet another example, Skier's Choice manufactures, uses, sells, and offers for sale products, including the Accused '161 Products, that infringe Claim 19 of the '161 Patent. **Claim 19** of the '161 Patent recites:

> A method of operating a water-sports boat to modify a wake having eventually diverging port and starboard waves formed by the water-sports boat traveling through water by selectively enhancing the starboard wave to have a face substantially smoother than a face of the port wave or alternatively enhancing the port wave to have a face substantially smoother than a face of the starboard wave, the method comprising:

utilizing one or more ballast tanks, bags, or bladders with ballast to increase the size of the wake produced by the water-sports boat;

moving the water-sports boat through water to produce the wake, wherein the water-sports boat comprises a rudder for steering the water-sports boat as the hull moves through water;

positioning a port flap in a deployed position while a starboard flap is in a retracted position, wherein when the starboard flap is in the retracted position the starboard flap is substantially entirely retracted behind a transom of the water-sports boat such that no substantial portion of the starboard flap extends past a port-side edge, a starboard-side edge, or a bottom edge of the transom, and wherein when the port flap is in the deployed position portions of the port flap move past the transom to deflect water traveling along a hull of the water-sports boat to enhance the starboard wave by making the face of the starboard wave substantially smoother than the face of the port wave; and

moving the starboard flap to the deployed position and the port flap to the retracted position to change from enhancing the starboard wave to enhancing the port wave while the water-sports boat is moving through water at a speed suitable for surfing when a surfer desires to change from surfing an enhanced starboard wave to surfing an enhanced port wave,

wherein when the port flap is in the retracted position the port flap is substantially entirely retracted behind the transom such that no substantial portion of the port flap extends past a port-side edge, a starboard-side edge, or a bottom edge of the transom, and

wherein when the starboard flap is in the deployed position portions of the starboard flap

move past the transom to deflect water traveling along a hull of the water-sports boat

to enhance the port wave by making the face of the port wave substantially smoother

than the face of the starboard wave.

50.     The Accused '161 Products operate the boat equipment to modify a wake having

eventually diverging port and starboard waves formed by the Accused '161 Products traveling

through the water by selectively enhancing the starboard wave to have a face substantially

smoother than a face of the port wave or alternatively enhancing the port wave to have a face

substantially smoother than a face of the starboard wave, as recited in **Claim 19** of the '161 Patent.

The Accused '161 Products also use one or more ballast tanks, bags, or bladders with ballast to

increase the size of the wake that the boat produces as it is moving through the water (*Figure 3*).

The Accused '161 Products are moved through water to produce the wake, and the Accused '161

Products include a rudder for steering the boat as the hull moves through the water (*Figure 2*).

51.     The Accused '161 Products also use a pair of flaps to modify and enhance the wake

waves using the method described in **Claim 19** of the '161 Patent. The Accused '161 Products are

configured to position the port flap in the deployed position while a starboard flap is in a retracted

position, such that the starboard flap is substantially entirely retracted behind a transom of the

water-sports boat such that no substantial portion of the starboard flap extends past a port-side

edge, a starboard-side edge, or a bottom edge of the transom and  portions of the port flap move

past the transom to deflect water traveling along the hull to enhance the starboard wave by making

the face of the starboard wave substantially smoother than the face of the port wave, and vice versa.

*See* Figures 5 and 6. The user can change from enhancing the port side wave to the starboard side

20

wave, and vice versa, at a speed suitable for surfing by changing the configuration of the pair of flaps. *See* Figure 6.

52.     Malibu has suffered damages as a result of Skier's Choice's infringement of the '161 Patent, including sales that Malibu lost as a result of Skier's Choice's infringement.

53.     Skier's Choice's infringement, inducement of infringement, and contributory infringement is literal infringement or, in the alternative, infringement under the doctrine of equivalents.

54.     Skier's Choice will continue to infringe, induce others to infringe, and/or engage in contributory infringement of the '161 Patent unless enjoined by the Court.

55.     Skier's Choice's acts of infringement have caused and, unless enjoined by this Court, will continue to cause Malibu to sustain irreparable damage, loss, and injury, for which Malibu has no adequate remedy at law. These include the loss of customer goodwill resulting from infringement and impairment of Malibu's reputation as an innovator if Skier's Choice is permitted to practice Malibu's patents.

56.     Skier's Choice will continue to derive and receive advantages, gains, and profits from its infringement in an amount that is not presently known to Malibu.

57.     Upon information and belief, Skier's Choice's infringement of the '161 Patent has been and continues to be deliberate and willful.  In committing these acts of infringement, Skier's Choice committed egregious misconduct including, for example, acting despite knowing that its actions constituted infringement of a valid patent, or recklessly disregarding the fact that its actions constituted an unjustifiably high risk of infringement of a valid and enforceable patent.

58.     Skier's Choice's infringement of the '161 Patent was and is deliberate and willful,
entitling Malibu to increased damages under 35 U.S.C. § 284 and to attorney fees and costs
incurred in prosecuting this action under 35 U.S.C. § 285.

## COUNT II: INFRINGEMENT OF U.S. PATENT NO. 8,578,873

59.     Malibu repeats and re-alleges each and every allegation contained in the preceding
paragraphs with the same force and effect as if repeated in full here.

60.     Skier's Choice infringes the '873 Patent by, inter alia, making, using, selling, and/or
offering for sale within the United States, and/or importing into the United States the Accused '873
Products and/or components covered by one or more claims of the '873 Patent. Skier's Choice has
acted without authority or license from Malibu, in violation of 35 U.S.C. § 271(a).

61.     For example, and without limitation, Skier's Choice makes the Accused '873
Products in the United States. *See* https://www.skierschoice.com/careers/ ("The Skier's Choice
manufacturing facility is located in Maryville, Tennessee…."). Upon information and belief,
Skier's Choice uses the Accused '873 Products within the United States, for example, for
demonstration, testing, and development purposes.  Further, Skier's Choice sells and offers for
sale the Accused '873 Products within the United States through a network of dealers. *See*
https://www.moomba.com/dealerships.

62.     Skier's Choice induces others to infringe one or more claims of the '873 Patent in
violation of 35 U.S.C. § 271(b). Skier's Choice has knowingly or with willful blindness induced
its customers and potential customers to infringe the '873 Patent with the specific intent to induce
such infringement by, among other things, encouraging infringing use of its above-described surf
systems through advertisements and marketing material and by providing an owner's manual and

22

other documentation that instructs customers in operating products and components provided by Skier's Choice in an infringing manner.

63.     Skier's Choice contributorily infringes one or more claims of the '873 Patent in violation of 35 U.S.C. § 271(c). Skier's Choice sells and offers to sell products or components knowing that they, alone or in combination with other components, infringe the '873 Patent and thereby contribute to others' infringement of the '873 Patent. Skier's Choice knows its products and components are especially made or especially adapted for use in creating a surf wake in a manner that infringes the '873 Patent and are not a staple item, article, or commodity of commerce suitable for substantial noninfringing use.

64.     On information and belief, Skier's Choice infringes the '873 Patent by supplying or causing to be supplied in and from the United States all or a substantial portion of the components of surf systems, where such components are uncombined in whole or in part, in such a manner as to actively induce the combination of such components outside of the United States in a manner that would infringe the patent if such combination occurred inside the United States, and/or by supplying or causing to be supplied in and from the United States one or more components that are especially made or especially adapted for use in infringing surf systems and that are not staple articles of commodities of commerce suitable for substantial noninfringing use, where such components are uncombined in whole or in part, knowing that such components are so made or adapted and intending that such components will be combined outside of the United States in a manner that would infringe the patent if such combination occurred inside the United States. Skier's Choice has acted without authority or license from Malibu, in violation of 35 U.S.C. § 271(f).

65.     For example, Skier's Choice manufactures, uses, sells, and offers for sale products, including the Accused '873 Products, that infringe Claim 1 of the '873 Patent.  The Accused '873 Products infringe the '873 Patent because they include, for example, all elements of at least **Claim 1** of the '873 Patent.

66.     **Claim 1** of the '873 Patent recites:

A boat configured to generate a starboard side surf wake for at least right-foot forward wake surfing and a port side surf wake for at least left-foot-forward wake surfing, said port side surf wake different from said starboard side surf wake, the boat comprising:

> [a] a port side upright water diverter movable between a first and second position, wherein one of said first and second positions produces said starboard side surf wake;

> [b] a starboard side upright water diverter movable between a first and second position, wherein one of said first and second positions produces said port side surf wake;

> [c] a controller responsive to user input into an input device; and

> [d] one or more actuators responsive to said controller to move said port side water diverter from one of said first and second positions to the other of said first and second positions, and move said starboard side water diverter from one of said first and second positions, wherein when said port side water diverter produces said starboard side surf wake for right-foot-forward wake surfing, a port side wake is substantially unsuitable for left-foot-forward wake surfing and when said starboard side water diverter produces said port side surf wake for left-

foot-forward wake surfing, a starboard side wake is substantially unsuitable for right-foot-forward wake surfing.

67.     The Accused '873 Products are boats configured to generate a starboard side surf wake for at least right-foot forward wake surfing and a port side surf wake for at least left-foot-forward wake surfing, said port side surf wake different from said starboard side surf wake, as shown in Figure 1 above.  *See also* Skier's Choice's 2016 Moomba Brochure at 6 ("Moomba's redesigned Auto Flow 2.0 Surf System delivers all-day waves with the flick of a switch. New contoured plates tame and control water flow coming off the surf-optimized hull. The result is massive surf waves, clean lips and tons of push from the swim platform all the way back to the barrel. Plus, you can transfer side-to-side in a matter of seconds at the push of a button — no need to shift people around.").

68.     As shown in *Figures 10* and *11*, the Accused '873 Products include a port side upright water diverter movable between a first and second position, wherein one of said first and second positions produces starboard side wake. Accused '873 Products also include a starboard side upright water diverter movable between a first and second position, wherein one of said first and second positions produces said port side surf wake.  *See also,* Supra 2017 Owner's Manual, https://crm.skierschoice.com/files/documents/2017/01/20/2017-Supra-Owners-Manual.pdf,     at p. 70 ("The Swell Surf System utilizes high-speed rams to adjust 5/16- inch stainless steel blades laser cut and bent to control water turbulence off the rear of the boat's running surface.  The specially designed trailing edge of these blades, or flaps as these types of elements are referred to in a fluid dynamics, create a vortex-effect behind the boat resulting in specific wave shapes.

Different angels of deployment of the blades create custom effects in the water turbulence to swell-up surf waves.").

Actuator

Upright water diverter



*Figure 10*



*Figure 11*

69.     Upon information and belief, Accused '873 Products also include a controller responsive to user input on a user device. Specifically, Accused '873 Products include a display unit that receives user input user input and controls movement of the port and starboard upright water diverters (*Figure 12*).



*Figure 12*

70.     Upon information and belief, the actuators of the Accused '873 Products are responsive to the controller to move the water diverters from first positions to second positions, wherein the port side water diverter produces a starboard side surf wake and wherein the starboard side water diverter produces a port side surf wake. As shown in *Figure 11*, when the controller is in a port side surfing configuration, the starboard plate is deployed. Upon information and belief, this configuration results in a smoother port side surf wake while producing a starboard surf wake that is substantially unsuitable for surfing.



Surf Port Wave

Starboard Plate
Deployed

*Figure 11*

71.     Malibu has suffered damages as a result of Skier's Choice's infringement of the '873 Patent, including sales that Malibu lost as a result of Skier's Choice's infringement.

72.     Skier's Choice's infringement, inducement of infringement, and contributory infringement is literal infringement or, in the alternative, infringement under the doctrine of equivalents.

73.     Skier's Choice will continue to infringe, induce others to infringe, and/or engage in contributory infringement of the '873 Patent unless enjoined by the Court.

74.     Skier's Choice's acts of infringement have caused and, unless enjoined by this Court, will continue to cause Malibu to sustain irreparable damage, loss, and injury, for which Malibu has no adequate remedy at law.

75.     Skier's Choice will continue to derive and receive advantages, gains, and profits from its infringement in an amount that is not presently known to Malibu.

28

76.     Upon information and belief, Skier's Choice's infringement of the '873 Patent has been and continues to be deliberate and willful.  In committing these acts of infringement, Skier's Choice committed egregious misconduct including, for example, acting despite knowing that its actions constituted infringement of a valid patent, or recklessly disregarding the fact that its actions constituted an unjustifiably high risk of infringement of a valid and enforceable patent.

77.     Skier's Choice's infringement of the '873 Patent was and is deliberate and willful, entitling Malibu to increased damages under 35 U.S.C. § 284 and to attorney fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

### COUNT III: INFRINGEMENT OF U.S. PATENT NO. 9,199,695

78.     Malibu repeats and re-alleges each and every allegation contained in the preceding paragraphs with the same force and effect as if repeated in full here.

79.     Skier's Choice infringes the '695 Patent by, inter alia, making, using, selling, and/or offering for sale within the United States, and/or importing into the United States the Accused '695 Products and/or components covered by one or more claims of the '695 Patent. Skier's Choice has acted without authority or license from Malibu, in violation of 35 U.S.C. § 271(a).

80.     For example, and without limitation, Skier's Choice makes the Accused '695 Products in the United States. *See* https://www.skierschoice.com/careers/ ("The Skier's Choice manufacturing facility is located in Maryville, Tennessee…."). Upon information and belief, Skier's Choice uses the Accused '695 Products within the United States, for example, for demonstration, testing, and development purposes.  Further, Skier's Choice sells and offers for sale the Accused '695 Products within the United States through a network of dealers. *See* https://www.moomba.com/dealerships.

81.     Skier's Choice induces others to infringe one or more claims of the '695 Patent in violation of 35 U.S.C. § 271(b). Skier's Choice has knowingly or with willful blindness induced its customers and potential customers to infringe the '695 Patent with the specific intent to induce such infringement by, among other things, encouraging infringing use of its above-described surf systems through advertisements and marketing material and by providing an owner's manual and other documentation that instructs dealers and customers in operating products and components provided by Skier's Choice in an infringing manner.  Skier's choice has continued these actions despite becoming aware of the '695 Patent and its infringement.

82.     Skier's Choice contributorily infringes one or more claims of the '695 Patent in violation of 35 U.S.C. § 271(c). Skier's Choice sells and offers to sell products or components knowing that they, alone or in combination with other components, infringe the '695 Patent and thereby contribute to others' infringement of the '695 Patent. Skier's Choice knows its products and components are especially made or especially adapted for use in creating a surf wake in a manner that infringes the '695 Patent and are not a staple item, article, or commodity of commerce suitable for substantial noninfringing use.

83.     On information and belief, Skier's Choice infringes the '695 Patent by supplying or causing to be supplied in and from the United States all or a substantial portion of the components of surf systems, where such components are uncombined in whole or in part, in such a manner as to actively induce the combination of such components outside of the United States in a manner that would infringe the patent if such combination occurred inside the United States, and/or by supplying or causing to be supplied in and from the United States one or more components that are especially made or especially adapted for use in infringing surf systems and

that are not staple articles of commodities of commerce suitable for substantial noninfringing use, where such components are uncombined in whole or in part, knowing that such components are so made or adapted and intending that such components will be combined outside of the United States in a manner that would infringe the patent if such combination occurred inside the United States. Skier's Choice has acted without authority or license from Malibu, in violation of 35 U.S.C. § 271(f). Skier's choice has continued these actions despite becoming aware of the '695 Patent and its infringement.

84. For example, Skier's Choice manufactures, uses, sells, and offers for sale products, including the Accused '695 Products, that infringe Claim 20 of the '695 Patent. **Claim 20** of the '695 Patent recites:

An inboard water-sports boat comprising:

a hull having a transom, the hull housing an engine configured to propel the hull through water to produce a wake having eventually diverging port and starboard waves;

a ballast system configured to add and remove water ballast;

a rudder responsive to a steering mechanism to steer the inboard water-sports boat as the hull moves through water;

a surf system configurable by an operator purposefully selecting which of the port wave and the starboard wave to enhance to improve surfing thereon, the surf system comprising:

a port-side deployable element movable between a deployed position and an at least substantially retracted position, wherein at least a portion of the port-side deployable

element is configured to redirect water flowing along a port side of the hull when in the deployed position;

a starboard-side deployable element movable between a deployed position and an at least substantially retracted position, wherein at least a portion of the starboard-side deployable element is configured to redirect water flowing along a starboard side of the hull when in the deployed position;

a first positioner configured to hold the port-side deployable element in the deployed position when the port-side deployable element is in the deployed position, wherein the first positioner comprises a first pin configured to selectively engage a first hole while being disengaged from a second hole to position the port-side deployable element at the at least substantially retracted position and to selectively engage the second hole while being disengaged from the first hole to position the port-side deployable element at the deployed position; and

a second positioner configured to hold the starboard-side deployable element in the deployed position when the starboard-side deployable element is in the deployed position, wherein the second positioner comprises a second pin configured to selectively engage a third hole while being disengaged from a fourth hole to position the starboard-side deployable element at the at least substantially retracted position and to selectively engage the fourth hole while being disengaged from the third hole to position the starboard-side deployable element at the deployed position;

wherein when a rider desires to surf on the port wave, the surf system is configured to enhance the port wave to have a face that is substantially smoother than a face of the

starboard wave by positioning the starboard-side deployable element and the port-side deployable element in a first configuration, and wherein when the rider desires to surf on the starboard wave, the surf system is configured to enhance the starboard wave to have a face that is substantially smoother than a face of the port wave by positioning the starboard-side deployable element and the port-side deployable element in a second configuration.

85.     The Accused '695 Products are inboard water-sports boats, each including a hull having a transom, the hull housing an engine configured to propel the hull through water to produce a wake having eventually diverging port and starboard waves, as shown in Figure 12.



*Figure 12*

86.     The Accused '695 Products also include a ballast system configured to add and remove water ballast. For example, as described in the Moomba 2015 Owner's Manual, the Moomba Outback V includes a "Ballast System" that "is an integrated and logically controlled system. At the heart of the system is a series of reversible pumps that use impellers to pump water in and out of the ballast system. The controller for the system runs the pumps an appropriate

Case 3:18-cv-00015-PLR-HBG   Document 1   Filed 01/12/18   Page 33 of 40   PageID #: 33

amount of time to fill and to empty the bags." *Moomba 2015 Owner's Manual, Outback V and M Series*, https://crm.skierschoice.com/files/documents/2017/05/03/2015%20Moomba%20OM-1.pdf.

87. The Accused '695 Products also include a rudder responsive to a steering mechanism to steer the inboard water-sports boat as the hull moves through water, as shown in Figure 13 below, which is an image from the Moomba 2015 Owner's Manual.



*Figure 13*

88. The Accused '695 Products include the Moomba Flow surf system, which is a "wake surf enhancement device that transforms wakeboarding wakes to fun versatility shaped surf waves without adjusting ballast thanks to straight forward operation and effective reliable design. Moomba's Flow Surf harnesses the flow of water at surf speeds." *See* Moomba 2015 Owner's Manual at 53. The Moomba Flow surf system is configurable by an operator purposefully selecting which of the port wave and starboard wave to enhance to improve surfing thereon: "Move easily between these three wave shape variations by sliding the Flow Surf arm into the desired position on the port or starboard side." *Id.*

89. The Accused '695 Products include a port-side deployable element and a starboard-side deployable element, each movable between a deployed position and an at least substantially

34

retracted position, wherein at least a portion of the port-side deployable element is configured to redirect water flowing along a port side of the hull when in the deployed position, and at least a portion of the starboard-side deployable element is configured to redirect water flowing along a starboard side of the hull when in the deployed position. Examples of the port-side deployable element and starboard-side deployable element are shown in Figure 14 below. According to Moomba Product Manager Matt Brown, the deployable element is "a rotating plate that deploys on the transom corners and allows the opposite side wake to shape according to the position of the plate." *See* "Go With The Flow: Moomba Boats Flow Surf Surf System," http://boardersmag.com/articles/2014/1/8/go-with-the-flow-moomba-boats-flow-surf-surf-system.



*Figure 14*

90. As shown in Figure 14 (above), the port-side deployable element and starboard-side deployable element include first and second respective positioners configured to hold the deployable elements in the deployed position. The first and second positioners comprise first and second pins, respectively, configured to selectively engage holes to position the deployable

elements in the at least substantially retracted and deployed positions, as shown in Figures 15 and

16.  *See* https://www.youtube.com/watch?v=TnOYHrtsydE.



Matt Brown Talks About The 2014 Moomba Flow Surf System

*Figure 15*



Matt Brown Talks About The 2014 Moomba Flow Surf System

*Figure 16*

91.     As shown in Figures 17 and 18 below, when a rider of the Accused '695 Products desires to surf on the port wave, the Moomba Flow surf system is configured to enhance the port wave to have a face that is substantially smoother than a face of the starboard wave by positioning the starboard-side deployable element and the port-side deployable element in a first configuration, and when the rider desires to surf on the starboard wave, the surf system is configured to enhance the starboard wave to have a face that is substantially smoother than a face of the port wave by positioning the starboard-side deployable element and the port-side deployable element in a second configuration.



Moomba Outback V Wake Demonstration - Rocky Mountain Boat Company

*Figure 17*



Moomba Outback V Wake Demonstration - Rocky Mountain Boat Company

*Figure 18*

92.    Malibu has suffered damages as a result of Skier's Choice's infringement of the '695 Patent, including sales that Malibu lost as a result of Skier's Choice's infringement.

93.    Skier's Choice's infringement, inducement of infringement, and contributory infringement is literal infringement or, in the alternative, infringement under the doctrine of equivalents.

94.    Skier's Choice will continue to infringe, induce others to infringe, and/or engage in contributory infringement of the '695 Patent unless enjoined by the Court.

95.    Skier's Choice's acts of infringement have caused and, unless enjoined by this Court, will continue to cause Malibu to sustain irreparable damage, loss, and injury, for which Malibu has no adequate remedy at law.

96.    Skier's Choice will continue to derive and receive advantages, gains, and profits from its infringement in an amount that is not presently known to Malibu.

97.     Upon information and belief, Skier's Choice's infringement of the '695 Patent has been and continues to be deliberate and willful.  In committing these acts of infringement, Skier's Choice committed egregious misconduct including, for example, acting despite knowing that its actions constituted infringement of a valid patent, or recklessly disregarding the fact that its actions constituted an unjustifiably high risk of infringement of a valid and enforceable patent.

98.     Skier's Choice's infringement of the '695 Patent was and is deliberate and willful, entitling Malibu to increased damages under 35 U.S.C. § 284 and to attorney fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

### Prayer for Relief

99.     Judgment in favor of Malibu that Skier's Choice has infringed the '161 Patent, the '873 Patent, and the '695 Patent;

100.     Preliminary and permanently enjoining Skier's Choice, its officers, agents, servants, and employees, and all persons acting in concert with them, and each of them, from infringing, inducing others to infringe, and/or engaging in contributory infringement of the '161 Patent, the '873 Patent, and the '695 Patent;

101.     Awarding Malibu damages based on Skier's Choice's infringement of the '161 Patent, the '873 Patent, and the '695 Patent in an amount sufficient to compensate Malibu, as well as enhanced damages pursuant to 35 U.S.C. § 284 awarded for Skier's Choice's willful, wanton, and deliberate infringement or otherwise;

102.     Declaring that this is an exceptional case under 35 U.S.C. § 285 and awarding Malibu its attorneys' fees and costs in this action;

103.     Assessing prejudgment interest on damages; and

104.     Awarding Malibu such other and further relief as the Court deems just and equitable.

Dated: January 12, 2017

By:     _s/Matthew M. Googe_____
MATTHEW M. GOOGE – TN BPR No. 030164
MICHAEL E. ROBINSON – TN BPR No. 24681
ROBINSON IP LAW, PLLC
9724 Kingston Pike, Suite 1403
Knoxville, TN 37922
Phone: (865) 978-6480
Facsimile: (865) 978-6493
mgooge@robinsoniplaw.com
rrobinson@robinsoniplaw.com

DARIN W. SNYDER – Cal. S.B. # 136003
DAVID S. ALMELING – Cal. S.B. # 235449
CAMERON W. WESTIN – Cal. S.B. # 290999
*pro hac vice application forthcoming*
O'MELVENY & MYERS LLP
Two Embarcadero Center, 28th Floor
San Francisco, CA 94111-3823
Phone: (415) 984-8700
Facsimile: (415) 984-8701
dsnynder@omm.com
dalmeling@omm.com
cwestin@omm.com

Attorneys for Plaintiff
MALIBU BOATS, LLC