**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
KNOXVILLE DIVISION**

| | | |
|---|---|---|
| MALIBU BOATS, LLC,<br><br>Plaintiff,<br><br>v.<br><br>SKIER'S CHOICE, INC.,<br><br>Defendant. | ) | Case No. 3:18-cv-00015<br>Consolidated with 3:19-cv-00225 |

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO EXCLUDE CERTAIN TESTIMONY OF MR. KEVIN BREEN**

**ORDER DENYING DEFENDANT'S MOTION TO EXCLUDE CERTAIN TESTIMONY OF MR. PHILIP GREEN**

**ORDER DENYING PLAINTIFF'S MOTION TO EXCLUDE CERTAIN OPINIONS OF MR. KEVIN ARST**

Before the Court are Defendant Skier's Choice's Motion to Exclude Certain Testimony of Mr. Kevin Breen, filed July 15, 2020. ("Breen Motion," ECF No. 98.) Also before the Court is Defendant's Motion to Exclude Expert Testimony of Mr. Philip Green, filed on July 15, 2020. ("Green Motion," ECF No. 99.) Also before the Court is Plaintiff's Motion to Exclude Certain Opinions of Kevin Arst, filed on July 15, 2020. ("Arst Motion," ECF No. 104.) For the reasons discussed below, Defendant's Breen Motion is **GRANTED IN PART**, Defendant's Green Motion is **DENIED** and Plaintiff's Arst Motion is **DENIED**.

## I. LEGAL STANDARD

### A. Expert Testimony

"[A] proposed expert's opinion is admissible, at the discretion of the trial court," if (1) the witness is qualified by "knowledge, skill, experience, training, or education"; (2) the witness's testimony is relevant, meaning that it "will assist the trier of fact to understand the evidence or to determine a fact in issue"; and (3) the witness's testimony is reliable. In re Scrap Metal Antitrust Litig., 527 F.3d 517, 528-29 (6th Cir. 2008) (quoting Fed. R. Evid. 702). In evaluating the reliability of expert opinion testimony, a trial court must consider whether the testimony is based on "sufficient facts or data" and is the "product of reliable principles and methods," as well as whether the expert "has applied the principles and methods reliably to the facts of the case." See Fed R. Evid. 702. "Such factors as testing, peer review, publication, error rates, the existence and maintenance of standards controlling the technique's operation, and general acceptance in the relevant scientific community should be considered in this review." United States v. Langan, 263 F.3d 613, 621 (6th Cir. 2001) (quoting Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579, 593-94 (1993)).

"The party offering the expert's testimony has the obligation to prove the expert's qualifications by a preponderance of the evidence." Burgett v. Troy-Bilt LLC, 579 F. App'x 372, 376 (6th Cir. 2014). That being said, "the rejection of expert testimony is the exception rather than the rule." Fed. R. Evid. 702 advisory committee's note, 2000 amend. "The task for the district court in deciding whether an expert's opinion is reliable is not to determine whether it is correct, but rather to determine whether it rests upon a reliable foundation, as opposed to, say, unsupported speculation." In re Scrap Metal Antitrust Litig., 527 F.3d at 529-30. "[M]ere weaknesses in the factual basis of an expert witness' opinion bear on the weight of the evidence rather than on its admissibility." McLean v. 988011 Ontario, Ltd., 224 F.3d 797, 801 (6th Cir. 2000) (quoting

United States v. L.E. Cooke Co., 991 F.2d 336, 342 (6th Cir. 1993) (internal quotation marks and alternations omitted).

### B. Expert Disclosure

"[A] party must disclose to the other parties the identity of any [expert] witness it may use at trial . . . ." Fed. R. Civ. P. 26(a)(2)(A). "[T]his disclosure must be accompanied by a written report—prepared and signed by the witness—if the witness is one retained or specially employed to provide expert testimony in the case or one whose duties as the party's employee regularly involve giving expert testimony." Fed. R. Civ. P. 26(a)(2)(B). "[I]f the witness is not required to provide a written report, this disclosure must state . . . the subject matter on which the witness is expected to present evidence" and "a summary of the facts and opinions to which the witness is expected to testify." Fed. R. Civ. P. 26(a)(2)(C).

"A party who has made a disclosure under Rule 26(a) . . . must supplement or correct its disclosure or response . . . in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing . . . ." Fed. R. Civ. P. 26(e)(1)(A). "If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c).

## II. ANALYSIS

### A. Defendant's Motion to Exclude Mr. Kevin Breen is Granted in Part

Defendant's Breen Motion asks the Court to exclude all opinion testimony "concerning the mental impressions, opinions and beliefs of United States patent and Trademark Office

("USPTO") patent examiners assigned to the applications that issued as a patent-in-suit[.]" (ECF No. 98 at PageID 3744.) Defendant points to opinions in which Breen purportedly "discusses not only the contents of the prosecution history, but also ***what the examiners were thinking*** when examining the applications for the patent-in-suit." (Id. at PageID 3745 (emphasis in original).) For example, Defendant points to ¶ 77 of the Expert Rebuttal Report of Kevin Breen ("Breen Validity Report"), in which he states:

> "[The examiner] thus did not view the pending claims as being limited to structures that deploy only to the sides of a watercraft, and he did not distinguish Castillo because its fins deploy below the bottom of the boat. Had he done so, he likely would not have considered Castillo and would not have found that Castillo anticipated the pending claims, including the limitation that the port and starboard diverters 'extend[] outboard of a transom of the watercraft to deflect water traveling along a hull of the watercraft and past the transom.'"

ECF No. 98-2 ¶ 77.

Defendant also argues that Breen "provides his opinion of what a hypothetical P[H]OSITA would believe about what the examiner 'understood—but did not state—about the scope of the asserted claims." For example, ¶ 78 of the Breen Validity Report states:

> The Examiner's rejection discussed above indicates to persons of ordinary skill in the art that he understood that limitation to include water diverters that extend outboard of the transom below the bottom of the boat to deflect water traveling along the bottom of the hull.

ECF No. 98-2 ¶ 78.

Defendant posits that Breen's opinions are impermissible speculation. "'[N]o matter how good' experts' 'credentials' may be, they are 'not permitted to speculate.'" Tamraz v. Lincoln Elec. Co., 620 F.3d 665, 671 (6th Cir. 2010) (citing Goebel v. Denver & Rio Grande W.R.R. Co., 215 F.3d 1083, 1088 (10th Cir. 2000); see also id. at 670 ("Because the 'knowledge' requirement of Rule 702 requires 'more than subjective belief or unsupported speculation,' the testimony should have been excluded." (internal citation omitted)). Defendant further points the Court to

district court cases in which testimony regarding the impressions of patent examiners was found to be impermissible speculation. See Abbott Biotech Ltd. v. Centocor Ortho Biotech, Inc., No. 09-40089-FDS, 2014 733077, at *8 (D. Mass. Dec. 19, 2014) (Finding that defendant's expert's testimony regarding the examiner's failure to consider various aspects of the patents was impermissible.); see also Barry v. Medtronic, Inc., No. 1L14-cv-104, 2016 WL 7665782, at *2 (E.D. Tex. July 19, 2016) (Holding that expert testimony regarding the thought processes of an examiner was impermissible and would not assist the trier of fact).

Plaintiff responds to Defendant's arguments by stating that Breen's opinions are directed to "how a P[H]OSITA, reading the intrinsic record of the asserted patents, would have understood their file histories." (ECF No. 111 at PageID 4406.) Plaintiff emphasizes that Breen merely "opines on what the intrinsic record evidence would 'convey to ***persons of ordinary skill in the art***[.]'" (Id. at PageID 4408 (emphasis in original).) The Court agrees that "Breen is undoubtedly qualified to opine about what a P[H]OSITA would know given his experience and technical background, which would qualify him as a person of ordinary skill in the art during the relevant time frame." (Id. at PageID 4409–10.) Plaintiff seems to concede that in Abbott and in Barry the problematic portions of the testimony were those in which the expert speculated about what an examiner "could have done" based on either failing to consider certain information or if he had been provided with different information than what was in the prosecution history. (Id. at PageID 4410.) Indeed, the buckets of permissible testimony can be split into two camps: those assessing the examiner's impressions, and those assessing the examiner's decisions from the viewpoint of a person having ordinary skill in the art. The latter is acceptable, but the former is not.

Breen's Validity Report provides both. For example, in ¶ 195 of the Breen Validity Report, Breen asserts:

> Accordingly, ***it is apparent that he did not view*** the pending claims as being limited to structures that deploy only to the sides of a watercraft, and he did not consider the plates of Moore (i.e., water diverters) that deploy below the bottom of the hull to be outside the scope of the claims. ***Had he done so***, he likely would not have considered Moore and ***would not have found*** that Moore anticipated pending Claim 1.

ECF No. 98-2 ¶ 195 (emphasis added).

This is purely speculative, and exactly the type of testimony that other district courts have rejected. Conversely, Breen's testimony in ¶ 196 is admissible, because it provides a PHOSITA's interpretation of the examiner's rejection:

> The Examiner's rejection indicates to ***persons of ordinary skill in the art*** that he understood the pending claims to include water diverters that extend outboard of the transom below the bottom of the boat to deflect water traveling along the bottom of the hull.

ECF No. 98-2 ¶ 197.

Accordingly, Defendant's motion to exclude Breen's testimony is **GRANTED IN PART**. The Court has identified the following paragraphs of Breen's Validity Report as impermissibly speculating on the thought processes of the examiner: ¶¶ 77, 195, and 197. These portions of Breen's Validity Report are **HEREBY EXCLUDED** from the testimony that may be provided by Breen.

### B. Defendant's Motion to Exclude Testimony of Mr. Phillip Green is Denied

Defendant seeks to exclude testimony of Mr. Phillip Green ("Green") "because his opinions rest on the supported premise that Malibu's claims concerning U.S. Patent 9,199,695 [] have been dismissed" and "because Mr. Green's analysis fails to properly apportion the lost profits and royalties he opines should be awarded to Malibu." (ECF No. 100 at PageID 3773.) The Court addressed these arguments in its Order Granting in Part and Denying in Part Defendant's Motions for Partial Summary Judgment ("Summary Judgment Order," ECF No. 176). As stated in the

Court's Summary Judgment Order, whether Plaintiff has met its burden of proving Panduit factor 2 (*i.e.*, showing the absence of non-infringing alternatives) is a question of the jury. (ECF No. 176 at PageID 6310.) Defendant further asserts that Green's testimony is not based on reliable methodology and that his "opinions all derive from a faulty model constructed using unsupported and uncorroborated statements of counsel, in contravention of the ordinary practice of those in his field[.]" (ECF No. 100 at PageID 3783.)

In response, Plaintiff provides that "[i]t is an undisputed fact that the Moomba Flow 1.0 surf system is not accused of infringing the '873, '161, and '777 Patents" and thus, "it is appropriate when analyzing damages for the '873, '161, and '777 Patents consider the specific benefits of the accused surf systems over non-infringing surf systems for the three patents at issue[.]" (ECF No. 113 at PageID 4464.) Indeed, the entirety of Defendant's argument boils down to the following: Green's report should be excluded because his damages calculation relies on the presence of the Moomba Flow 1.0 system as a non-infringing alternative.

As the Court stated in its Summary Judgment Order, whether the Moomba Flow 1.0 system is a non-infringing alternative is a factual determination for the jury. The Court will not exclude Green's testimony because the purported basis to which Defendant objects is a reasonable one for calculation of damages. Furthermore, as explained in detail in the Court's Summary Judgment Order, Green's market reconstruction analyzes lost profits using the Panduit factors, which the Federal Circuit has held may satisfy the principles of apportionment. See Mentor Graphics v. EVE-USA, Inc., 851 F.3d 1275, 1288 (Fed. Cir. 2017) ("In this case, apportionment was properly incorporated into the lost profits analysis and in particular through the Panduit factors…We hold today that on the undisputed facts of this record, satisfaction of the Panduit factors satisfies principles of apportionment: Mentor's damages are tied to the worth of its patented features.").

Accordingly, the Court reiterates and readopts its Summary Judgment Order, and agrees with Plaintiff that "Green properly relied on [the withdrawal of the '695 Patent] in conducting his damages analysis" and "determined lost profits based on the sale of boats under the well-established Panduit analysis." (ECF No. 113 at PageID 4472.) Defendant's motion to exclude expert testimony of Phillip Green is therefore **DENIED**.

### C. Plaintiff's Motion to Exclude Certain Opinions of Kevin Arst is DENIED

Plaintiff asks the Court to exclude three opinions of Mr. Kevin Arst ("Arst"), Defendant's damages' expert. Plaintiff asserts that Arst relies on an incorrect legal standard on three occasions: 1) He opines that Plaintiff must show that the Asserted Patents are "basis of customer demand" to recover lost profits and applies the "entire market value rule."; 2) He provides that the Panduit factors must be performed on a "customer-by-customer" basis; and 3) He asserts that Plaintiff's lost profits due to lost boat sales must be further apportioned to reflect the fact that the accused surf systems are only a portion of an overall boat. (ECF No. 104 at PageID 4141.) For the reasons below, Plaintiff's motion is denied.

"Patentee's may prove lose profits through presenting a hypothetical, 'but for' world where infringement has been 'factored out of the economic picture.'" Versata Software, Inc. v. SAP America, Inc., 717 F.3d 1255, 1265 (Fed. Cir. 2013) (quoting Grain Processing Corp. v. Am. Maize-Prods Co., 185 F.3d 1341, 1350 (Fed. Cir. 1999)). "While the hypothetical, but-for world must be supported with sound economic proof, '[t]his court has affirmed lost profit awards based on a wide variety of reconstruction theories.'" Id. (citing Crystal Semiconductor Corp v. TriTech Microelectronics Int'l, Inc., 246 F.3d 1336, 1355 (Fed. Cir. 2001)). While the Panduit analysis is *one* of these theories, it is not the only one.

First and foremost, Defendant notes that its expert determined damages based on the "but for" standard for lost profits. (ECF No. 110 at PageID 4371.) Arst "opines that Mr. Green failed to apply a proper market reconstruction, because the reconstructions used by Mr. Green were premised on the assumptions that the Flow 1.0 product is not an infringing product and that a feature common to the patents-in-suit are an automated ability to change wake from one side to another." (Id. at PageID 4371.) The Court agrees that Defendant is able to apply a "basis for consumer demand" theory of "but for" lost profits, particularly given the lack of a clear Federal Circuit standard on proving lost profits.

For example, in Power Integrations, Inc., the Federal Circuit noted that "[w]here the accused infringer presents evidence that its accused product has other valuable features beyond the patented feature, the patent holder must establish that these features do not cause consumers to purchase the product." Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc., 904 F.3d 965, 979 (Fed. Cir. 2018). Similarly, in Mentor Graphics, the Federal Circuit provided that proving the Panduit factors was "[o]ne, useful, but non-exclusive" path to showing lost profits, but not the only way. 851 F.3d at 1284. Arst is free to rebut the viability of Green's Panduit analysis and instead proffer his own theory for why Plaintiff is not entitled to lost profits, including the entire market value rule. See Rite-Hite Corp. v. Kelley Co., Inc., 56 F.3d 1538, 1549 (Fed. Cir. 1995) (en banc) (internal citations omitted) ("When a patentee seeks damages on unpatented components sold with a patented apparatus, courts have applied a formulation known as the 'entire market value rule' to determine whether such components should be included in the damage computation, whether for reasonable royalty purposes, or for lost profit purposes."). Plaintiff's first argument therefore fails.

Next, Plaintiff asserts that Arst opines that Panduit *must* be analyzed on a per customer basis. In response, Defendant points out that Arst acknowledges that "a market share allocation approach has been found by courts to be an acceptable method for assessing the impact of non-infringing alternatives on claimed lost sales and profits" and notes that a market share allocation can be appropriate where the Panduit factors are met. (ECF No. 110 at PageID 4375.) Defendant asserts that Arst does not opine that a market share allocation is wrong, but instead opines that Green's Panduit analysis is flawed. (Id.) Consequently, "Arst's opinions stand for the unremarkable proposition that Mr. Green failed to properly analyze non-infringing alternatives and, as a result, failed to properly reconstruct the applicable market and account for the undisputed non-patented features of the accused boats." (Id.) In other words, Arst's expert report focuses on taking apart Green's Panduit factor 2 analysis, which would therefore preclude a market-share allocation approach. In fact, the Federal Circuit in Mentor Graphics explicitly stated that the determination of Panduit factor 2 is "is made on a customer-by-customer basis." 851 F.3d at 1286. The Federal Circuit has also acknowledged the sufficiency of adjusted market share approaches. See, e.g., Akamai Techs., Inc. v. Limelight Networks, Inc., 805 F.3d 1368, 1380 (Fed. Cir. 2015) ("This court has repeatedly approved similar adjusted market share analyses for estimating lost profits."). Plaintiff is not entitled to exclude all other forms of calculating lost profits, including those done on a permissible customer-by-customer basis. Its second argument accordingly fails.

Finally, Plaintiff asks the Court to exclude Arst's testimony for impermissibly apportioning lost profit damages. (ECF No. 104 at PageID 4147.) Contrary to Plaintiff's position however, the Federal Circuit has not stated that further apportionment is *disallowed* where the Panduit factors are met. In Mentor Graphics, the Federal Circuit held that meeting the Panduit factors *could* be sufficient: "We hold today that on the undisputed facts of this record, satisfaction of the Panduit

factors satisfies the principles of apportionment[.]" 851 F.ed at 1286. Furthermore, Defendant argues that Plaintiff's argument mischaracterizes its position: "Contrary to Malibu's contentions, Mr. Arst does not opine that lost profits need to necessarily be apportioned if Panduit factors are met. Rather, Mr. Arst has opined that Mr. Green failed to show the Panduit factors are met and, by future, failed to properly apportion the lost profits sought with the features of the patented invention[.]" (ECF No. 110 at PageID 4377.) Defendant adds that Arst's "opinions merely call into question whether Mr. Green fully and properly took into account the nature of the particular market and accused products at issue" and that "if Mr. Green is able to provide his lost profit opinions, Mr. Arst should be allowed to testify as to the same based on his review of the facts." (Id. at PageID 4378.) The Court agrees. Both Green and Arst have applied admissible legal standards to their analysis, and the differences in their final determinations largely hinge on *factual* differences in their analyses. It is the jury's province to determine credibility and make factual determinations, so long as the experts have based their opinions on reliable standards. Accordingly, Plaintiff's motion to exclude is **DENIED**.

## IV. CONCLUSION

For the foregoing reasons, Defendant's Motion to Exclude Testimony of Kevin Breen is **GRANTED IN PART**, Defendant's Motion to Exclude Testimony of Phillip Green is **DENIED**, and Plaintiff's Motion to Exclude Testimony of Kevin Arst is **DENIED**.

**IT IS SO ORDERED**, this 21st day of April, 2021.

/s/ Jon P. McCalla
JON P. McCALLA
UNITED STATES DISTRICT JUDGE